IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02811-PAB-CBS

DAVID R. KOHOUT,
    Plaintiff,
v.

BANK OF AMERICA HOME LOANS;
NATIONAL ASSOCIATION FKA THE BANK OF NEW YORK TRUST COMPANY NA
SUCCESSOR TO COUNTRYWIDE HOME LOANS, DALLAS, TX;
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and
QUICKEN LOANS, INC.,
    Defendants.

## AMENDED RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE[1]

Magistrate Judge Craig B. Shaffer

    This civil action is before the court on "BAC Home Loans Servicing, LP ("BAC"), The Bank of New York Mellon ("BoNY") and Mortgage Electronic Registration Systems, Inc.'s ("MERS") Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(4)-(6)" ("Motion to Dismiss") (filed November 24, 2010) (Doc. # 5).  Pursuant to the Order of Reference dated November 19, 2010 (Doc. # 4) and the memorandum dated November 29, 2010 (Doc. #7), this matter was referred to the Magistrate Judge.  The court has reviewed the Motion to Dismiss, "Plaintiff's Response to Motion to Dismiss" ("Response") (filed December 21, 2010) (Doc. #11), Defendants' "Reply in Support of Their Motion to Dismiss" ("Reply") (filed January 3, 2011) (Doc. #14), "Plaintiff's Memorandum of Law and Points and Authorities" ("Surreply") (filed February 2, 2011) (Doc. #15), the pleadings, the entire case file, and the

---

[1]Amended to correct typographical errors in the previous Recommendation of United States Magistrate Judge (Doc. # 17).

1

applicable law and is sufficiently advised in the premises.[2]

## FACTUAL BACKGROUND

On October 14, 2010, Mr. Kohout initiated a state court action as a *pro se* litigant in the Larimer County District Court, Colorado. (*See* Larimer County District Court, Case No. 2010-cv-1038) ("Complaint") (Doc. #1-2). Mr. Kohout commenced this action seeking injunctive relief from the foreclosure of his real property located at 1349 Star Ridge Court, Wellington, Colorado ("Property"). On or about May 27, 2005, Mr. Kohout and his wife, Roxane Kohout, obtained a $238,000.00 refinance loan ("Loan") from Quicken Loans Inc., which was secured by the Property. (*See* Exhibits 1-2 (Doc. #5-2) attached to the Motion to Dismiss). Quicken Loans Inc. notified Mr. Kohout by a "Notice of Assignment, Sale, or Transfer of Servicing Rights" dated June 14, 2005, that Countrywide Home Loans, Inc. ("Countywide") would service the Loan. (*See* Exhibit 3 (Doc. #5-2, p. 24) attached to the Motion to Dismiss). In April 2009, Countrywide changed its name to BAC Home Loans Servicing, LP. (*See* Motion to Dismiss, p. 3).

Mr. Kohout defaulted on the Loan in February 2009. (*See* Exhibit 4 (Doc. #5-3, p.13) attached to the Motion to Dismiss). On August 6, 2009, BoNY recorded a "Notice of Election and Demand for Sale" of the Property.[3] (*See* Exhibit 5 (Doc. #5-3, p. 15) attached to the Motion to Dismiss). On January 15, 2010, BoNY filed a motion for an order authorizing the sale of the Property. (*See* Exhibit 6 (Doc. #5-3, p. 17) attached to the Motion to Dismiss). The motion was granted on February 10, 2010. (*See* Exhibit 7 (Doc. #5-3, p. 23) attached to the Motion to

---

[2] On a motion to dismiss pursuant Rule 12(b)(6), the court may consider materials in addition to the pleadings if such materials are public records or are otherwise appropriate for the taking of judicial notice. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004). Such items include orders, items appearing in the court record, and records filed in state court. *Wyser-Pratte Management Co., Inc. V. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005). Additionally, the court may look both to the complaint itself and to any documents attached as exhibits to the complaint. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

[3] The Notice of Election and Demand for Sale lists Defendant BoNY as the Holder of Evidence of Debt.

Dismiss). However, there have been no attempts to foreclose on the Property. (*See* Motion to Dismiss, p. 3).

On October 14, 2010, Plaintiff filed a form complaint entitled "Complaint for Judicial Review Pursuant to §24-4-106 C.R.S. and Request for Stay and Designation of Record" with the Larimer County District Court. (*See* Complaint (Doc. # 1-2) pp. 2-3). This is the Complaint that was removed to the U.S. District Court for this action. Mr. Kohout alleges in the Complaint that he received from Defendant BAC a "Notice of Intent to Accelerate," dated September 14, 2010, which constitutes an agency order subject to judicial review.[4] (*See* Doc. # 1-2, pp. 2-3). In addition, Plaintiff attached to the Complaint a seven-page document entitled "Plaintiff's Notices, Requests, and Demands to Defendant and the Court," and a fourteen-page document entitled "Qualified Written Request, Non-negotiable Dispute of Alleged Debt." (*See* Doc. # 1-2).

While Mr. Kohout's Complaint alludes to a multitude of improper practices perpetrated by the lending industry and refers to several federal statutes, he appears to be asserting six claims for relief: (1) violation of the Federal Real Estate Settlement and Procedures Act of 1984 ("RESPA"), 12 U.S.C. § 2601 *et seq.*; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; (3) breach of contract; (4) violation of the Colorado Constitution; (5) violation of the United States Constitution; and (6) violation of the Uniform Commercial Code ("UCC").[5] (*See* Complaint, p. 5). Mr. Kohout's prayer for relief seeks injunctive relief that "will effectively stop the scheduled foreclosure sale of Plaintiff's property by Defendant until Defendant has complied with Plaintiff's RESPA Letter Demands" and

---

[4] The Notice of Intent to Accelerate notified Mr. Kohout that his loan was in serious default and in order to cure the default he must submit a payment of $17,882.93 before October 14, 2010. Additionally, Mr. Kohout was advised that if he failed to cure the default by the date given, his mortgage payments would be accelerated with the full amount remaining becoming due and payable in full, and a foreclosure proceeding would be initiated. (*See* Doc. #1-2, p. 11).

[5] Defendants also noted a claim under TILA (the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*) in their Motion to Dismiss, however, a TILA claim was not raised by Mr. Kohout and thus is not addressed by the court.

"compel Defendant to give Plaintiff a valid 'Full Deed of Release' on the lien that Defendant attached to Plaintiff's property." (*See* Doc. #1-2, pp.7-8). Defendants removed this action to the U.S. District Court on the basis of federal question jurisdiction. (*See* Doc. #1).

## ANALYSIS

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Mr. Kohout has failed to state a claim for relief. When considering a motion to dismiss, the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 2010 WL 437335, at *3 (10th Cir. 2010) (quoting *Smith v. Untied States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). In *Twombly*, the Supreme Court held that the appropriate standard of review under Rule 12(b)(6) is whether the complaint contains enough facts to support a claim for relief that is plausible on its face. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). In order to survive a motion to dismiss, the plaintiff must nudge claims across the line from conceivable to plausible. *Id*. This requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

Mr. Kohout appears *pro se*, thus the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). Nevertheless, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Additionally, the court should not act as an advocate for a *pro se* litigant. *Id*.

*I. Plaintiff's FDCPA Claim*

Mr. Kohout's Complaint contains only a passing reference to the FDCPA and does not identify with particularity which provisions of that statute he believes have been violated. (*See* Doc. # 1-2). Defendants argue that to the extent Plaintiff alleges a claim under FDCPA, they are not "debt collectors" because "BAC began servicing the Loan and collecting payment well before the plaintiff defaulted." (*See* Motion to Dismiss, pp. 12-13).

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692(e)). "The Act regulates interactions between consumer debtors and debt collector[s], defined to include any person who regularly collects . . . debts owed or due or asserted to be owed or due another. " *Id*. (quoting §§ 1692a(5), (6)) (internal quotation makes omitted). However, courts have consistently held that a "debt collector" under the FDCPA does not include a creditor, mortgage servicing company, or assignees of the debt if the entity acquired the loan before it was in default. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985); *Llewellyn v. Allstate Home Loans, Inc.*, 2011 WL 2415770, at *14 (D. Colo. 2011) (citing 15 U.S.C. § 1692(a)(6)(F)).

In order for Defendants to be subjected to the requirements of the FDCPA, it must be established that they are debt collectors for purposes of that statute. Defendants support their argument by providing documents demonstrating that BAC began servicing Mr. Kohout's loan on June 14, 2005, and subsequently, Mr. Kohout defaulted on the Loan in February 2009. (*See* Motion to Dismiss, p. 3; Doc. #5-2, p. 24; Doc. #5-3, p. 2) In his Response, Mr. Kohout asserts that Defendants define their corporation(s) as a debt collector because their automated phone

system states, "we're a debt collector." (*See* Response (Doc. #11), pp. 8-9). Additionally, Plaintiff asserts the Loan was in default when BAC purchased Countrywide in April 2009. (*See* Response, p. 9). Defendants insist that Countrywide changed its name to BAC after Mr. Kohout's loan was in default but that servicing remained with the same entity.[6] (*See* Reply (Doc. #14), p. 6). Subsequently, Defendants state BAC is not a "debt collector" under FDCPA. *Id.*

Mr. Kohout has failed to allege any factual support for his allegations that the Loan was purchased by BAC after it was in default and that BAC is not a "debt collector" under the FDCPA. Moreover, Mr. Kohout has not sufficiently alleged facts as to how or when the FDCPA was violated. To the extent Mr. Kohout wishes to pursue a claim under FDCPA, the Complaint fails to state a claim for which relief may be granted.

## II. *Plaintiff's RESPA Claim*

Mr. Kohout contends that BAC violated RESPA by failing to respond to his "RESPA letter" dated March 2, 2010. (*See* Complaint, p. 5). Furthermore, Plaintiff purports that BAC failed to comply with his request because they did not supply "original wet-ink signature loan documents." (*See* Response, p. 7).

The purpose of RESPA is to make sure that consumers receive information regarding the nature, settlement costs, and servicing of home loans. 12 U.S.C. § 2601(a). If a loan servicer receives a qualified written request ("QWR") from the borrower seeking information relating to the servicing of a loan, the servicer must provide a written response acknowledging the correspondence within 20 days. 12 U.S.C. § 2605(e)(1)(A). A QWR must "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower" and "include[] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account

---

[6] *See* Defendants' "Rule 7.1 Disclosure Statement" (Doc. # 2).

is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B). Furthermore, "a letter cannot be 'qualified' under the statute if it does not relate to the servicing of the account." *Harris v. American General Finance, Inc.*, 2005 WL 1593673, at*3 (D. Kan. 2005). The statute defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." § 2605(i)(3). "If the lender fails to comply with a QWR, the borrower is entitled to any actual damages [caused by] the failure; and . . . any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." *Albury v. America West Bank*, 2011 WL 902617, at *2 (D. Utah 2011) (citing § 2605(f)(1)) (internal quotations and citations omitted).

Mr. Kohout's RESPA claim against Defendants fails for several reasons. First, Defendants are not required to provide Mr. Kohout's with a "wet-ink" signature.

> In 2009, a foreclosure defense colloquially termed "show me the note" began circulating through courts across the country. Advocates of this theory believe that only the holder of an original wet-ink signature note has the lawful power to initiate a non judicial foreclosure. Courts have routinely rejected the defense on the ground that foreclosure statutes simply do not require production of the original note at any point during the proceedings.

*Stein v. Chase Home Finance, LLC*, 2010 WL 4736828, at *3, (D. Minn. 2010) (internal quotation makes and citations omitted).

Second, Mr. Kohout's correspondence dated March 2, 2010, does not qualify as a QWR. The letter neither requests information regarding servicing of the Loan nor does it allege any errors with the account. *See* 12 U.S.C. § 2605(e)(1); *Harris v. American General Finance, Inc.*, 2005 WL 1593673, *3 (D. Kan. 2005). Instead, Mr. Kohout demanded that BAC produce loan

7

documents as evidence that it was the holder of the Loan. Therefore, BAC had no duty to respond to the March 2 correspondence under RESPA. *See King v. American Mortg. Network, Inc.*, 2010 WL 3516475, at *2 (D. Utah 2010) (dismissing RESPA claim after finding the plaintiff's letter was not a QWR because the letter did not allege any error or request for information about servicing; rather it was an accusation of unlawful conduct and a demand to produce loan documents for inspection to which the lender had no duty to respond). Moreover, Defendant BAC did respond to Plaintiff's request providing a written explanation that incorporates the information requested, or an explanation of why the information requested is unavailable, as required by RESPA. *See* Exhibit 4 (Doc. # 5-3) attached to the Motion to Dismiss; 12 U.S.C. § 2605(e)(2)(C); *Cf. Schwartz v. Bank of America, N.A.*, 2011 WL 1135001, at *5 (D. Colo. 2011) (finding the defendants' response was sufficient under RESPA which requires when responding to a QWR that a loan servicer provide the borrower with a written explanation of information requested, or an explanation of why the information requested is unavailable).

Finally, even if Mr. Kohout's correspondence did qualify as a QWR, "RESPA requires borrowers to show actual damages as a result of a failure to comply with its provisions." *Thayne v. Taylor, Bean & Whitaker Mortg. Corp.*, 2010 WL 3546929, at *3 (D. Utah 2010). Mr. Kohout has not alleged any actual damages resulting from Defendants' failure to respond to his request for a "wet-ink signature." Furthermore, Mr. Kohout requests injunctive relief which is not an available remedy under RESPA. *See* 12 U.S.C. § 2605(f)(1). Therefore, Mr. Kohout's RESPA claim fails.

*III. Remaining Claims Should Be Dismissed*

In addition to the FDCPA and RESPA claims, Mr. Kohout alleges violations of the Colorado Constitution, the United States Constitution, the UCC, and breach of contract. Again,

Mr. Kohout's claims fall short of the pleading requirements.  "If the complaint is sufficiently devoid of facts necessary to establish a liability. . . a court must conclude that plaintiffs have not nudged their claim across the line from conceivable to plausible." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  Mr. Kohout has not come forward with well-pled facts that would establish a cause of action under the Colorado Constitution, United States Constitution, or the UCC.  Additionally, Mr. Kohout does not establish the necessary elements of a breach of contract such as the identity of the parties or nature of the contract.  Thus, these allegations must be dismissed for failure to state a claim.

*IV.  Standing Argument is a Defense, Not a Claim for Relief*

Mr. Kohout alleges that Defendants lack standing to foreclose on his Property because of Defendants' failure to provide Plaintiff with "the original wet-ink signature documents showing rightful ownership." (*See* Doc. #1-2, p. 6; Response, p. 9).  However, Colorado law does not require that original documents be produced by the holder of debt to foreclose on a property, it requires only copies of certain documents such as the deed of trust.  *See* C.R.S. § 38-38-101.

Additionally, Mr. Kohout's argument appears to be a defense to the foreclosure action and not an independent claim for relief.  *See Brunson v. American Home Mortgage Servicing*, 411 Fed.Appx. 165, 2011 WL 335074, at *1 (10th Cir. 2011).  The Larimer County District Court already determined that Defendants had standing to foreclose by granting an "Order Authorizing Sale." (*See* Exhibit 7 (Doc. # 5-3) attached to the Motion to Dismiss).  If Mr. Kohout believed Defendants lacked standing to foreclose on his property that challenge would have been appropriate in the state court proceedings but is inappropriate here.

## CONCLUSION

Having reviewed the Complaint and the arguments advanced by the parties, the court concludes that Defendants' Motion to Dismiss should be granted.  The Complaint lacks

sufficient well-pled facts and allegations to satisfy Rule 8 or defeat a motion to dismiss under Rule 12(b)(6).[7]  Accordingly, IT IS RECOMMENDED that Defendants' Motion to Dismiss" (filed November 24, 2010) (Doc. # 5) be GRANTED and this civil action be dismissed based on failure to state a claim upon which relief can be granted.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. One Parcel of Real Property Known as 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant

---

[7] Defendants also move to dismiss the Complaint pursuant Fed. R. Civ. P. 12(b)(4)-(5) for insufficient process and insufficient service of process, however, these arguments become moot when a 12(b)(6) motion is granted.

had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see*, *Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 29th day of July, 2011.

BY THE COURT:

　s/Craig B. Shaffer　　　
United States Magistrate Judge